With the lawyers who are going to present their arguments, please approach the bench and introduce yourselves. Good morning, Your Honor. Chris Bendick from the State Appellate Defender's Office on behalf of Alan Ron Spurton. Counsel, please remember to keep your voices loud. You're competing with the traffic on Los Alamos. It's hard to hear you. I can't hear you at all. What did you say? Thank you. Okay. Are you going to reserve some time for rebuttal? That is my plan, Your Honor. Okay. You may proceed. May it please the Court. Good morning, Your Honor's Counsel. My name is Chris Bendick from the State Appellate Defender's Office and I represent the appellant, Alan Ron Spurton. With this Court's permission, my plan is to focus on whether Burton satisfied the cause and prejudice test applicable to the leave to file stage for successive post-conviction petitions. In Alan Ron Spurton's initial post-conviction proceedings, he alleged his due process rights had been violated when the State failed to disclose that Chicago police officers under the command of John Burge had tortured his co-defendant, Marcus Shaw, and when the State failed to correct the false trial testimony of Shaw regarding that torture at trial. Since the filing of the initial petition, the report of the Special States Attorney, Edward J. Egan, has been released, providing irrefutable corroboration of Burton's initial claims. As Shaw's trial testimony was the linchpin of the State's case against Burton, this Court should find Burton satisfied the cause and prejudice test for the filing of the instant petition and amend the case for further post-conviction proceedings. In Peacock v. Pitzenberger, the Illinois Supreme Court officially… Let me ask you a question. You mean this report alone is enough? Does this report talk about Shaw? The report talks about Area 2 and the abuse under John Burge, and it talks about Detective Michael Kill. Michael Kill was subpoenaed. Oh, but you're just answering my question. Does it talk about Shaw? It does not mention Shaw in the report. However, Shaw, in his affidavit from 1991, confirmed that he had been tortured, which was consistent with his pre-trial statements and his own motion to suppress statements. And again, it's alleged that Shaw committed perjury at trial when he denied that torture occurred. We have in our possession an affidavit from Shaw that says torture did occur, the State knew about this, and they still put him on. Now, in Peacock v. Pitzenberger, the Illinois Supreme Court officially adopted the cause and prejudice test applicable to the leave to file stage, and that's used to determine whether a claim raised can be adjudged on its merits. And this was codified by the Illinois Legislature in 725 ISCS 5122-1F. A portion of the statute reads that only one petition may be filed without leave of court. For any successive petitions, quote, leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his initial post-conviction proceedings. And prejudice results from that failure. A prisoner shows cause by identifying an objective factor that impeded his or her ability to raise it in the initial post-conviction proceedings. Did the court know all about this prior to this report? Which the circuit court? Mm-hmm. In the instant proceedings is what you're saying? Well, in the process of this case with his other post-conviction petitions. Was he aware of Shaw? Or was he aware of the special state search report? I'm just clarifying your question, Your Honor. Was the court aware of the fact that Shaw had claimed that he was beaten into a conviction? And in fact, turning to the circuit court's reasoning in its motion to submit, or its granting of the denial of leave to file, Shaw claimed that that was a reason for the denial of leave to file, because he had claimed this before. However, people v. Rice demonstrates that, in fact, it serves as a basis for refiling of the claim, the special state's attorney's report. In people v. Rice, Rice had claimed both in his 1991 petition and his 2000 petition that he'd been tortured. In 2007, he refiled the same claims using the special state's attorney's report. And this court found that that was cause for allowing the refiling. So the circuit court was absolutely wrong in this case to find that there was no cause because it had been filed before. In fact, in the Illinois Supreme Court, the state conceded the cause had been established. It was so obvious in that case. Now, turning to Burton's case, the state does not contest that the 2006 state's attorney's report was not in existence at the time of the initial proceedings. Simply put, the 2006 report provides Burton the cause for refiling of the claims that he included in his initial post-conviction petition proceedings. Further, Burton's petition establishes cause for its filing through which reliance upon people v. Rice, a decision that was not available until 20 years after his initial post-conviction petition was filed in 1991. Counsel, explain again why this report is relevant to the Burton case. It's relevant to the claim as to Shaw's coerced testimony by Chicago police officers under Area 2. The special state's attorney's report established a systematic wide abuse for officers that were under the command of John Burge. It is undisputed that detective Kill was under the command of a judge. So because Shaw was a witness in this case and his testimony had been coerced in an earlier case, then therefore you think that that indicates systematic wide abuse sufficient to allow for the cause requirement to have been met in Burton. Is that what you're saying? No, that the testimony in here was coerced itself. In this case itself, Shaw, at his pretrial motion to suppress his own, because he was a co-defense of Burton, alleged that he had been tortured by officers, namely detective Kill. At trial, Shaw went back on that testimony saying, no, I wasn't tortured. I only made that up. Immediately after trial, he provided an affidavit to Burton saying, no, I was tortured. The state knew about this. This was included in the initial post-conviction petition. The 2006 state's attorney's report provides cause for refiling this, because it shows that there was systematic abuse at that time at Area 2 for officers under the command of John Burge. In fact, this court in People v. Jakes has recognized detective Kill has been alleged to have abused upwards of 20 individuals. Let me ask you this. In the Rice case, if I remember, the defendant filed a second post-conviction petition in 2007, the year after the 2006 report was released. Isn't that true? That's correct, Your Honor. And in this case, the defendant had four successive post-conviction petitions since the release of the 2006 report. So he had ample opportunity to present this information before this. However, for cause, the Illinois Supreme Court and the legislature are explicit. You consider whether it was filed in the initial post-conviction proceedings. Quote, legal court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings. That was reaffirmed in People v. Smith when it adjudged the cause and prejudice standard in comparison to the first stage just standard. So we have to look at whether it could have been filed earlier? We don't look at that? Is that what you're telling me? We're looking for cause to determine whether a document can be filed. We determine cause comparing it, the instant petition, to the initial proceedings. The state concedes that in their brief, that that is the standard, the initial post-conviction proceedings. This might be judged at some sort of second stage, some sort of due diligence, if that's what you're suggesting, Your Honor. That is adjudged at a second stage proceeding, once the document has absolutely been allowed to file, been filed. If Your Honors have no further questions as to cause, Byrne's petition also demonstrated prejudice. In order to demonstrate prejudice at the leave-to-file stage, a defendant must show that the constitutional violation so infected the trial that the resulting conviction and sentence violated due process. Notably, the circuit court, in denying leave-to-file petition, did not even address prejudice as to the Marcus Shaw claims. You're not claiming this man's an innocent man? We're not claiming actual innocence, Your Honor. We're going via cause and prejudice, correct. The state's argument on appeal that Byrne was not prejudiced by the state's failure to disclose Marcus Shaw's torture and the failure to correct the false trial testimony of Marcus Shaw, only highlights why Byrne was prejudiced. Essentially, the state claims that because Byrne was allowed to cross-examine Shaw about his claims of torture and his motion to suppress, that that, therefore, alleviates any prejudice. That's exactly why Byrne was prejudiced. During his cross-examination, Byrne was robbed of the opportunity through the state's nondisclosure of its knowledge as to Shaw's torture from impeaching Shaw about that torture. Decades of Brady v. Maryland and the Poole v. Illinois press event demonstrate occurs when there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. There's no question here Marcus Shaw was the linchpin of the state's case. He provided all the salient details as to his, Burton's, and McKeel Washington's alleged involvement in the murder of Anthony Watkins. Simply put, without Marcus Shaw, there is no case here. Do Your Honors have no further questions as to cause and prejudice? Twenty-five years after Alan Arandis Burton initially brought his constitutional claims as to Marcus Shaw's torture and the state's failure to correct Shaw's false testimony at trial about that torture, Burton is asking this court for the limited remedy of allowing Lee to file his post-conviction petition so that his claims may be adjudged knowing full well the torture that occurred at John Burgess' hands and by his detectives at Area 2. We ask for relief requested in our briefs and reserve the remainder of our time in rebuttal. Thank you, Your Honors. Good morning, Your Honors. We are pleased to court Robert Williams, Special Assistant State's Attorney. I think that what the court has to focus on here is that this is the seventh appeal by this defendant. So what's new between the last- That's not a microphone, counsel. I'm sorry? That is not a microphone. It's just a recording device. We can't hear you. You've got to speak up a little louder because of what's going on out there. The question that has to be asked is what's new since the last appeal that was filed by Mr. Burton. And there's no constitutional violation here. The only things that I knew, there are two things, and one of which the defendant didn't argue in his argument. The defendant found an undated spreadsheet showing cases in which it was alleged that detectives kill coerced confessions from other defendants. The other thing that they allege is that he somehow, he found some medical records from February of 1989. Judge Kaczmarski found the defendants' new claims are frivolous, they're barred by race judicata, and the defendant cannot establish cause of prejudice. And first I want to say- How do you distinguish the Rice case, which you're opposing, counsel, seems to think would allow for cause- Well, two ways- To file a successive petition. Two ways, Your Honor. First of all, Mr. Shaw's confession was not read at Burton's criminal trial. It just wasn't. The whole issue at Mr. Burton's criminal trial was that he made a plea agreement with the state, and he was cross-examined extensively on that plea agreement. And he testified that, yes, I did make a motion to suppress my confession, I made these allegations that I was abused by the police, but it was all a lie. And that was fully aired at Burton's criminal trial. His confession was not used in order to convict Mr. Burton. He was convicted on testimony, which the defendant explained he got a plea offer from the state, and he's testifying pursuant to that. And counsel kind of confuses the issues in his briefs in which he first talks about Shaw's physically coerced confession, and then he talks about Shaw's physically coerced testimony. There's no evidence that his testimony was physically coerced. All the evidence is right there on the record. There's nothing that wasn't disclosed. They had an opportunity. They strenuously cross-examined Mr. Shaw, both Mr. Burton's attorney and Judge Panley, who was a public defender representing the co-defendant, Washington, that if you read the transcript, he was asked every possible question about his plea agreement with the state. And interestingly enough, Mr. Burton finally concluded that he was living in fear of his life because he was testifying against a fellow gang member. And mysteriously enough, after he got his plea agreement worked out and his reduced sentence, he submitted this affidavit. Now, the affidavit, it's interesting because the defendant pointed out in his reply brief that I did make a mistake. I said that Mr. Shaw's affidavit was the subject of several of these post-conviction petitions and successive petitions, and Mr. Shaw's affidavit came up once. And that was in connection with his original post-conviction petition. And he submitted this affidavit, and Judge Kaczmarski held, and this Court affirmed, that Shaw's affidavit does not rise to the level of a recantation of his testimony at the defendant's trial. That makes use of Mr. Shaw's affidavit res judicata in law the case. It's not a recant. And this Court held, and I quote, And there's nothing new that's been presented. There's nothing in the current petition. There's nothing in the defendant's briefs. There's no evidence that Mr. Shaw lied when he testified at Mr. Burton's trial. He recanted. Everything that the defendant is now trying to say is a reason for the Court to reopen the case. And our position is he hasn't established cause, and he cannot establish prejudice. Now, you asked some questions earlier about the 2006 report. The 2006 report was raised on two prior occasions by Defendant Burton, both in connection with his own confession. Counsel submitted a Pennsylvania v. Finley motion to dismiss prior appeals relating to Mr. Burton's own coerced confession, allegedly coerced confession, because his confession was not used at his trial. There's no prejudice with respect to Mr. Burton's confession, whether it was coerced or not. And they haven't argued that now. They've kind of backed off of whether or not his own confession was coerced and whether or not his case should be reversed on those grounds. He made an argument as to prejudice as well. Pardon? Paulson Counsel did make an argument as to prejudice. Correct. And our argument as to prejudice is a couple of things. First, there can't be any prejudice in this case because the Court has already determined that Mr. Shaw's affidavit that was given 25 years ago does not amount to a recant of his prior testimony. His prior testimony was clear that the allegations he made in his motion to suppress were false. They were a lie. And he testified that. And he was cross-examined ad nauseam by counsel for both defendants. And the new evidence that they provide, which is an undated spreadsheet, doesn't meet the burden of showing cause. Where did this document come from? Judge Kazmersky said there's no evidence that he couldn't have presented this earlier. And similarly, there's no evidence since he raised the 2006 report previously in connection with his own confession, there's no reason he couldn't have raised it in connection with Mr. Shaw's alleged false testimony at his two prior appeals in which he argued the 2006 report. Also, I'd like to point out to the Court, we raised a standing argument in terms of the ability of Mr. Birdman to raise issues relating to Mr. Shaw's confession. And the defendant's reply challenges the standing order, and I'd like to refer the Court to a case, People v. Bannister, 236 Illinois 2nd, at page 1, a 2009 decision, in which they affirm this Court, they said the defendant's lack standing to challenge a plea agreement between the State and his co-defendant. And it's really very similar here. The defendant didn't say anything false in his testimony. He testified that he was telling the truth at Birdman's trial, and he had a plea agreement with the State. They were able to cross-examine him on that plea agreement, and I think if you look at the Bannister case, they'll say there's nothing wrong with that procedure. And the defendant also cited a case, Napu v. Illinois, which is a U.S. Supreme Court case, which is totally different from this case because in that case the co-defendant lied at his trial, but the State offered him anything to testify. Here, Mr. Shaw fully disclosed everything at his trial. He disclosed his plea agreement, and they were able to question him on that. So there's no violation here. There's no proof that, first of all, there's no proof that he testified falsely, and second of all, there's no proof that the State had any knowledge that he testified falsely because they believed he was testifying to the truth. And also, counsel seems to think that Mr. Shaw's testimony was the only evidence against the defendant in this case. Well, he said that it was the lynchpin in this case. But if the Court looks back to the Court's opinion on the direct appeal, you can see that Anthony Williams testified that Burton confessed the crime to him. You can see that other witnesses, including an expert witness, testified on facts tying the crime to this defendant. Police officers testified as to the scope of their investigation. There was a lot of evidence in this case. Your position is that Shaw's testimony was not false and there was sufficient cross-examination? Yes. And also that the Court has already decided, and this Court has already decided, that his affidavit, which was made 25 years ago, does not rise to the level of recantation of his trial. Then the affidavit is not a sufficient recantation. Correct. And therefore, it's raised to the count. The only other matter that counsel raised were his medical records. And if counsel has no argument, as to cause and prejudice, we'll rely on what the State said in its brief. But I would like to point out, with respect to his medical records, that he testified about his visit to Cermak Hospital 25 years ago during his motion to suppress hearing. And he also testified that the injuries that were reflected, that he told Cermak Hospital about, he said were caused by a fight with an inmate. Those records also say that there was indication of a prior break or injury to that area as well. That there was an old injury. And that's what he's arguing, is that that old injury was a result of him being abused. But it wasn't old. It was within a month of his interrogation. It wasn't old, because it was within a month of his interrogation. But I think the point of this is that this matter was raised during his motion to suppress testimony. And Judge Gazmersky found he knew about his visit to Cermak Hospital. Now, what's the reason he didn't bring it up in any of his successive PCs that he filed four times before this one? And there's no explanation for it. So there's no cause that could be demonstrated. And secondly, even assuming that this defendant could show cause for the medical records, his confession was not used at trial, and therefore it would not change the outcome. So there's no prejudice here. And finally, the only other issue that I could see is Rice. And again, with respect to the Rice case, Mr. Shaw's confession was not used at Mr. Burton's trial. There's no basis for expanding the holding of Rice to cover situations like this. Okay. Thank you, Judge. Rebuttal. Your Honor, if I may, very briefly, in rebuttal. What do you have to say about the fact that the confession wasn't used at trial? Well, we're not claiming that the confession was used at trial, Your Honor, and our Shaw-based claim is that has no bearing on the Shaw-based claim, which is that Shaw was tortured and he committed perjury at trial, stating that it wasn't tortured. And for the State to get up here and say that we don't have any evidence different from what Shaw testified at trial, the 1991 affidavit couldn't be more clear that I perjured myself at trial. The State knew about this. I got tortured by the police. And what is further new since the original petition? Well, you said that that affidavit was not, that the court ruled that that affidavit was not a recantation. Well, the court did not rule that, by the way, but it ruled that it wasn't sufficiently reliable. It said, quote, In our view, in the instant case, defendant has failed to demonstrate specific facts that would support his contention that the State knowingly used false testimony of Marcus Shaw at trial to secure a conviction against him. Now, 2016, the Illinois Supreme Court and People v. Sanders found it an inappropriate credibility determination at the second stage, which this would have been. So I think People v. Sanders would render this case incorrect at this point. And since then, we have a 2006 State's Attorney's Report, anyway, backing up Shaw's claim. So in 1997, when this post-conviction petition appeal was adjudicated, we didn't have the Special State's Attorney's Report stating that there was systematic, wide abuse by Johnsburg detectives. But how many post-conviction petitions were filed after the report? There were four, and this is the fifth one, including this one. The question is, why is it that that report, the affidavit, the spreadsheet, the medical records, why weren't all of those things submitted in one of those earlier post-conviction petitions? I don't know why they weren't submitted, but for cause, that does not matter. We compare the instant petition to what was available at the time of the initial petition. That is by statute, that is by Pitts and Barger, that is by People v. Smith. The State concedes that. At the initial petition, the medical records were not available, you're saying? The spreadsheet wasn't available? No, it wasn't available. Only the 2006 report? In regards to the medical records and the spreadsheets, in the instant petition, Burt has explained he just obtained those in 2013. For cause purposes, that is, it satisfies cause. He provided an explanation, that satisfies it. Regarding the Shaw claim, you're right, you're on it. But the medical records were available. I mean, they were his records, correct? He still needed to get those from, they were in the possession of who? The State. And it was only until 2013 that he was able to obtain those. Regarding his second claim, regarding that the motion to suppress statements hearing would have come out differently had the... But it's the first injury that he was complaining about, right? Yes. And so you're saying that the medical records weren't available for that first injury? That the medical record for regarding the February 1st admission medical records or the later records that would have corroborated Burton as to his injuries. Because he was cross-examined at the motion to suppress about reporting it initially to Dr. Reese. And just clarifying the question, Your Honor, was it regarding the later medical records? I'm talking about the initial medical records where he was saying, because the second record was just, I mean, it didn't directly relate to the injury that he was complaining about where he said that he had been abused. Correct. And that was just, but in looking at those second records, he looked further and found, and in our claim, that the earlier injury was reflected in those records as well. Correct. Is that correct? Yes, Your Honor. And so for cause purposes, we've explained that in 2013 he obtained them. That it would be something that would be determined whether those was correct or if he could have earlier obtained those, that's a second stage consideration. For cause purposes, he's provided an explanation and satisfied cause. Turning back to. . . Let me ask you something about the medical records. What did the medical records show? The medical records. . . Is there an affidavit from a doctor that says that this bony pathology, the slight deformity in the pinky is a result of a police brutality? It does not. I mean, regarding the later records from February. . . It says that there's pre-existing deformity. Okay. And that could have happened from a softball injury, couldn't it? It's a pre-existing deformity, and we know that he claimed that he had been abused by the cops 30 days before. He claimed that he was struck in the wrist, not in the fingers, in the wrist. Okay. But we have a deformity in the pinky finger, the fifth metacarsal. So where is the expert testimony that would be able to tell us that that deformity could or might have been a result of police brutality? Are you suggesting that he should have gotten an expert testimony? No, I'm not suggesting anything. You're the lawyer. I'm not the lawyer. I'm just the judge. I'm saying for cause purposes, he has explained that he got these medical records in 2013. They show pre-existing injuries, which would have contradicted Dr. Reese as to there being injuries. And we know that there were injuries because the PD reflected those on the same day. So how do we know how old that bony pathology is without an expert witness? We don't at this point. But that's a second-stage consideration, not a cause consideration, Your Honor. Now, turning back to counsel's claim that this is the seventh petition, for Shaw, that's not the concern. The concern was, was this raised in the initial petition? It was. And what's changed? Special State's attorney's report. And turning to Burton's claims, Judge Beeble has found this is a valid claim of torture already. And for standing, we simply disagree that standing is at issue here, Your Honor. Brady v. Maryland and Napoo v. Illinois are not standing-based claims. Coerced testimony or false testimony, there's no standing issue in those cases. People be banished or, as the State concedes, is some sort of guilty plea case. It has no basis here. If Your Honors have no further questions, we ask for relief requested in the briefs. Thank you, Your Honor. Okay. Well, thank you very much for the good arguments and the good briefs. And we will take this case under advisement. I want to advise that Justice Reyes, who is not here, will listen to the tapes and we will have a decision-making process of the three of us. Thank you very much, Court.